IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **TIFFANY DAVIDSON**, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **6:16-cv-01939-AKK** |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| **COMMISSIONER**, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Tiffany Davidson filed a petition under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the Administrative Law Judge's ("ALJ") denial of disability insurance benefits, which has become the final decision of the Commissioner of the Social Security Administration ("SSA"). For the reasons explained below, the court affirms.

**I.     Procedural History**

Davidson, a 26 year old woman, filed an application for disability insurance benefits (DIB) on April 1, 2013, alleging a disability beginning January 26, 2013. Doc. 7-6 at 2. SSA issued an initial denial letter on August 22, 2013, doc. 7-4 at 22-31, and Davidson timely requested a hearing before an ALJ, which was held on

April 29, 2015. Doc. 7-3 at 16-40. The ALJ issued an unfavorable opinion, doc. 7-4 at 36-48, and the SSA Appeals Council denied Davidson's request for review, doc. 7-3 at 2. Davidson timely filed this petition for review. Doc. 1.

## II.     Standard of Review

First, federal district courts review the SSA's findings of fact under the "substantial evidence" standard of review. 42 U.S.C. §§ 405(g), 1383(c); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (internal citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings, even if the evidence preponderates against the Commissioner. *See id.*

Credibility determinations are the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). However, "[t]he testimony of a treating physician must ordinarily be given substantial or considerable weight unless good

2

cause is shown to the contrary," and the failure of the Secretary "to specify what weight is given to a treating physician's opinion and any reason for giving it no weight" constitutes reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Courts have found good cause to discount a treating physician's report when it is "not accompanied by objective medical evidence, . . . wholly conclusory," or "inconsistent with [the physician's] own medical records." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). Reports filed by physicians "who do not examine the claimant, taken alone, do not constitute substantial evidence on which to base an administrative decision," *Spencer on Behalf of Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985), and, as such, are "entitled to little weight if [they are] contrary to the opinion of the claimant's treating physician." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985). Likewise, the opinion of a "one-time examiner" is also not entitled to any deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

Second, federal courts review the SSA's conclusions of law de novo, *Bridges v. Bowen,* 815 F.2d 622 (11th Cir.1987), and "[f]ailure to apply the correct legal standards is grounds not for remand but, for reversal." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). No presumption attaches to either the ALJ's

choice of legal standard or to the ALJ's application of the correct legal standard to the facts. *Id.*

Finally, reviewing courts have the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. Statutory and Regulatory Framework

While the ALJ has a duty to develop a full and fair record, "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). To qualify for DIB, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(I)(A), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine, in sequence:

> (1) whether the claimant is doing substantial gainful activity;
> (2) whether the claimant has a severe impairment;
> (3) whether the impairment meets or is medically equivalent to one listed by the Secretary;
> (4) whether the claimant is unable to perform his or her past work; and
> (5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work, the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

### IV. The ALJ's Decision

The ALJ applied the five-step analysis for DIB claims, *see McDaniel*, 800 F.2d at 1030, and found that Davidson satisfied step one because she had not engaged in substantial gainful activity since January 26, 2013. Doc. 7-4 at 41. At step two, the ALJ found that Davidson has the following severe impairments:

5

obesity and lumbar degenerative disc disease. *Id.* At step three, however, the ALJ found that Davidson does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). *Id.* at 42. Finally, at step four, the ALJ found that Davidson's residual functional capacity ("RFC") allowed her to perform her past work. *Id.* at 42-45. As a result, the ALJ denied Davidson's claim.

V. **Analysis**

The sole issue Davidson presents for review is whether the ALJ committed reversible error by purportedly failing to develop a full and fair record. Doc. 11 at 9-10. Specifically, Davidson asserts that the ALJ "improperly relied on imaging from 2011 to support his conclusion that Davidson is not presently disabled and has not been disabled since 2013" and had a duty to order updated imaging. Doc. 11 at 10-11 (citing *Sims v. Astrue*, 2010 WL 2952686, at *4 (M.D. Ala. July 26, 2010)). Based on the record before the ALJ, the court disagrees with Davidson. As the Eleventh Circuit has held, "[e]ven though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits," and an ALJ is not required to order additional testing "as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d

1253, 1269 (11th Cir. 2007). This was precisely the case here, where the ALJ denied Davidson's claim based on his findings that: (1) Davidson's impairments did not meet or medically equal the severity of any of the Listings; and (2) Davidson has the RFC to perform her past work. Doc. 7-4 at 42-45. The record supports both of these findings.

## A. The substantial evidence supports the finding that Davidson's impairments do not meet or medically equal any of the Listings.[1]

According to the ALJ, Davidson's spinal condition fails to meet or medically equal Listing 1.04.[2] Specifically, the ALJ found that "the record shows no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively," and that "[d]uring her consultative examination, [Davidson] displayed a normal gait and was able to

---

[1] *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.
[2] Listing 1.04 involves "Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
  A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
  B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
  C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.

*See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

ambulate effectively." Doc. 7-4 at 42. In making this determination, the ALJ gave great weight to the consultative physician, Dr. Jonathan Ledet. Doc. 7-4 at 44. Davidson disagrees with this finding and contends that the ALJ erred by giving great weight to Dr. Ledet. Unfortunately for Davidson, the record supports the ALJ's decision.

Dr. Ledet examined Davidson once and reported that Davidson "had no difficulty getting on and off [the] examination table, [getting] up and out of [her] chair," or dressing herself, required no assistance to ambulate, displayed a normal gait and a full range of motion in her cervical and lumbar spinal areas, and performed heel-walks, toe-walks, and squats without difficulty. Doc. 7-8 at 23-24. Overall, Dr. Ledet opined that Davidson's examination was consistent with "low back pain" causing "minimal to moderate" limitations. Doc. 7-8 at 24.

Generally, as a non-treating "one-time examiner," Dr. Ledet's opinion is only entitled to deference if it is consistent with the record. *See McSwain*, 814 F.2d at 619. There is no error here, however, because a review of the record shows that Dr. Ledet's opinion is, in fact, consistent with the record as a whole. For example, Davidson sought medical treatment several times in 2013 and 2014 for various ailments unrelated to this appeal, and none of the medical professionals she saw noted any major spinal issues in their notes. During this time, Davidson visited Walker Baptist Medical Center on five occasions, and each of the five

physicians who treated her noted that her musculoskeletal examination demonstrated a "normal range of motion." Doc. 7-9 at 4-62. Davidson also visited Capstone Rural Health Center twice in 2014, where a Certified Registered Nurse Practitioner, Lindsey Jones, reported on both occasions that her musculoskeletal system appeared "normal."[3] Doc. 7-9 at 63-67. Put simply, none of the medical evidence during the relevant period is inconsistent with Dr. Ledet's findings.

The ALJ also followed the correct legal standards in determining whether Davidson's impairments satisfy any of the listings. In accordance with SSR 02-1p, he considered whether the cumulative effect of Davidson's obesity, in combination with her degenerative disc disease, would satisfy or medically equal one of the listings. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ found that "although obesity may contribute" to her back pain, "no treating or examining physician has placed any restrictions on [her] due to [her] obesity," doc. 7-4 at 44, and explained that he found Davidson's pain testimony not credible because it is inconsistent with the other evidence in the record, doc. 7-4 at 43.[4] The substantial evidence

---

[3] Under the regulations that existed at the time Davidson filed her claim, nurse practitioners were not considered "acceptable medical sources," but ALJs were nonetheless permitted to consider their opinions as evidence. *See* 20 C.F.R. § 404.1527.

[4] In making this determination, the ALJ correctly applied the standard created in *Hand v. Heckler*, 761 F2.d 1545 (11th Cir. 1985), which requires "evidence of an underlying medical condition," and either "objective medical evidence that confirms the severity of the alleged pain arising from that condition" or evidence that the "objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *See Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).

supports this finding, and Davidson has not cited any parts of the record that are inconsistent with the overall conclusion that she has more than a moderate amount of back pain, which may be slightly compounded by her obesity. The court's review of the record reveals substantial evidence supporting the ALJ's decision with regard to step 3 of the disability analysis. *See McDaniel*, 800 F.2d at 1030. Accordingly, this portion of the ALJ's opinion is due to be affirmed. *See* 42 U.S.C. §§ 405(g), 1383(c); *Martin*, 894 F.2d at 1529.

**B. The substantial evidence supports the finding that Davidson has the residual functional capacity to perform her past work.**

The record also supports the ALJ's finding regarding Davidson's RFC. The ALJ relied on the opinion of an independent vocational expert, James Hare, in deciding that Davidson's functional limitations do not prevent her from performing jobs as a cake icer and a sales clerk that she has held in the past. Doc. 7-4 at 44-45. Indeed, although Hare testified that, among other things, Davidson "should avoid any climbing of ladders, ropes, or scaffolds and any more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling," he opined that these limitations would not prevent Davidson from returning to work as a cake icer or a sales clerk. Doc. 7-3 at 36-37. Moreover, Hare added that, even assuming that Davidson could only perform work while sitting down, her functional capacity would allow her to perform many other jobs in the national and

state economy. Doc. 7-3 at 37. There is nothing before the court that refutes these findings. In fact, Davidson does not direct the court to any evidence in the record that contradicts Hare's testimony or the ALJ's findings with regard to her RFC. Consequently, this portion of the ALJ's opinion is also due to be affirmed. *See McDaniel*, 800 F.2d at 1030.

## CONCLUSION

Consistent with this opinion, there is substantial evidence to support the ALJ's conclusions. Accordingly, the Secretary's decision is due to be affirmed.

**DONE** the 12th day of February, 2018.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE